# 7760

Court of Appeal — Parish of Orleans.

- - - - - - - -

Parish of Orleans

vs.

Salvadoro Garaflo, Anthony Garaflo
and Rosalie Woodman.

- - - - - - - - -

- - - - - - - - -

By Dinkelspiel, J.

By Dinkelspiel, J.

The District Attorney for the Parish of Orleans
instituted the present suit against the owners and
tenant of the premises 318 South Liberty Street, same
being under act of the Legislature No. 47 of 1918, and
charges "that the premises in question was a house of
prostitution and assignation, conducted, continued, or
permitted, or exists in violation of the law."

And he further avers that the said building and
premises are used by prostitutes for the purpose of
prostitution and assignation and others of like char-
acter who rent rooms therein and use said rooms for
the purpose of prostitution and assignation; that said
premises were used on or about August 2, 1919; that
said premises/the general reputation of being a resort
of prostitutes and a place where prostitution and assig-
nation was permitted, carried, conducted or exists, and
that all acts charged in the petition constitute a
nuisance within the law, and that a writ of injunction
and abatement is necessary and should issue herein.

A rule nisi issued directing the defendants to show
cause why the writ prayed for should not issue and for
judgment of abatement closing the house for one year
being rendered.

The answer of the owners, Salvadore and Anthony
Garaflo, admit the ownership of the property in ques-
tion and deny all other allegations contained therein,
particularly in reference to the immorality of the
house in question or that they ever/that their tenant,
Rosalie Woodman, who had occupied the place for eight
years, had always borne a good reputation and as far

385

as they, the owners, knew, the premises in question were used as a rooming and boarding house, had had respectable people as tenants thereof, and if same was used for immoral purposes, which they deny, same was used without their knowledge or consent and with their disapproval.

The other defendant, the occupant of the premises, in her answer admits the occupancy of the premises, which she had occupied for more than 15x years in the past and was always conducted by her as a rooming and boarding house, and that she had always conducted same in an orderly manner, complied with all the laws and regulations in effect, and that she was living in said premises about the time in question and never had rented said rooms for any such purpose either for prostitution or assignation.

Plaintiff introduced in the court a quo several witnesses, one Charles People, who substantially states: That he had never been in the house in question at any time, except on the night of August 7, 1919; that he went there in company with a friend of his and two girls; that he saw the defendant, Rosalie Woodman. had little or no conversation with her, engaged a room, did not know the reputation of the house, had never heard it discussed did not commit any act of prostitution, and did not see any act of prostitution committed; did not say to Rosalie Woodman why he wanted the room; was not a paid investigator of vice nor a detective, nor was he investigating to ascertain whether or not this was an immoral house; does not know how the police got information about the house; had been in the service of the United States, but not at the time; was not in

386

uniform, his occupation at that time being that of a salesman.

Sergeant Martin R. Push was the next witness examined on behalf of plaintiff and he testifies that he knows the premises in question, 318 South Liberty Street; never knew who kept these rooms until the night of August 7th, above referred to; describes the condition on the night in question and the people he found there, three men and three women; also describes the character of clothes they wore; disclaims any knowledge that he knew the reputation of the house in question for morality or immorality; arrested the various persons found in the house; the women were sent to the Isolation Hospital; he had been in the First Precinct since the 1st of March, 1918; never had occasion to arrest Rosalie Woodman, nor investigate her premises; knew nothing about the premises at all, other than what occurred on the night in question; and what he did was under the instructions of Captain Healy, who was in command of the First Precinct, and that was to watch this house; had never investigated the premises himself; only acted upon instructions received from his superior officer; knew nothing of his own knowledge about the character of the house in question, nor the circumstances under which the rooms were rented; and he was asked the question, "Do you know whether prostitution is permitted, carried on, continued or existed in that house?" And he answered, "No sir, I don't." Had been investigating the house for three weeks and saw no act which would justify making any arrest; passed the place often, and did not see anything out of the way during his tours.

The court asked this witness: "Did you inquire of parties living in the neighborhood?" And he answered:

"No sir, I made no investigation; received no complaint of the house; only under the instructions from the Captain, and that is why I had the house under surveillance for three weeks"; and during those three weeks he was asked if he inquired anything from the neighbors about the house, and his answer was "No sir".

Andrew Arnold, a witness for plaintiff, states: He was working in plain clothes in the First Precinct on the 7th of August, 1919, and went into the premises in question; had been in that neighborhood at that time several hours; he described all parties going in there about midnight and informed Officer Fitzpatrick about it; had never watched the house in question at any time previous to the occasion referred to, and was only called upon to watch it on this particular occasion, and he described it as the other witnesses had, the rooms, the people, and other particulars in reference to clothing or want of clothing of the people found in the premises; he had made no investigation of the character of the people in question; knew nothing about the circumstances under which they rented the rooms; had been in that particular precinct since the middle of June; never investigated the house prior to the present occasion; knew nothing of the reputation prior to that night; does not know whether prostitution is permitted, carried on, or exists in the premises, except as to the night in question; never knew that the parties had ever been arrested before, nor whether the defendant, Rosalie Woodman, had ever been arrested; knew nothing about the general reputation of the house; never heard one way or the other anything about it.

Corporal A. G. Giraud testifies that he found three women in the house on that evening, who gave their

names; had been on the police force for 19 years and in the precinct on different occasions possibly for a year and a half; does not know the defendant, Rosalie Woodman, personally, simply by sight; never had an occasion to investigate that house at any time prior to this night, and on this night had some one else investigating the place; and in answer to the question whether prostitution is permitted, carried on, or exists in the premises, he answered, "Well, they did that night", and beyond that he knows nothing; never arrested any women from that house before; never had a complaint before; and the only night a complaint was made was on the night in question.

Rosalie Woodman testifies: She was one of the defendants; that she lived in the premises 318 South Liberty Street from childhood; that she was now 38 years old; that her mother had lived there prior to her death; had never during the whole period of her life been arrested; had never kept a house of prostitution and assignation, but simply rented rooms, conducted a boarding house, and generally people boarded there by the week; she gave the names of several of her boarders, the prices charged for board and lodging; and she testified further that on the night of August 7th several ladies came and wanted rooms, and she asked the question whether for room and board, and they answered in the affirmative. She then described the entrance of the police, who arrested her and the other inmates of the house. Testifying in reference to a gentleman named Elino Thiot, who had several times rented rooms in this particular house, she says that he made arrangements with her for room and board; that

389

she did not know that he was living at 1317 Baronne Street, and she knew nothing more than what she had testified to; that he had been through her house several times; that she had lived in this house with her mother some 15 years . and she lived in it prior to the ownership of the other defendants, and at the time that she and her mother rented it, it was owned by Mr. Jim Douglas.

We have substantially quoted from such parts of the testimony in this case, both for plaintiff and defendant, in order to ascertain whether or not plaintiff was entitled under the law to the relief sought and the judgment prayed for.

Several cases of like character have been before this Court, and we have decided in the case of this plaintiff against A. Burglass and others, quoting from the syllabus of that case: "A single immoral act or even a series of immoral acts between the same persons does not constitute prostitution or brand the house, wherein they are permitted, a house of prostitution."

"To constitute a house of prostitution or assignation, the premises must be maintained either, if only for a brief period, for the purpose of promiscuous commerce between the sexes."

In the 215 N. Y. page 167, Tenement House vs. McDavitt, the syllabus reads: "We hold that an owner is not liable for a penalty because of a single act of vice, undiscovered either by himself or his agent. The penalty is imposed when the building has been kept or maintained by the occupant for the purpose of prostitution; if, however, the occupant has used it for indiscriminate intercourse with men, the intelligent owner will be obliged to know of the offense and must prevent it at his peril."

"The penalty is recoverable without knowledge or negligence of the owner. The imposition of such a penalty assumes, however, a condition of permanence sufficient to constitute a use, and that an act of vice on a single day, followed at once by the eviction of the tenants, is insufficient of itself to show that the building has been used for prostitution within the meaning of the law." Same authority, page 172.

"Speaking of disorderly houses, bawdy house, 14 Cyc. 484. "A bawdy house or a house of ill fame is a house or place kept for the shelter and defense of persons practicing unlawful sexual intercourse and in which such intercourse is practiced." And from the same author: "A bawdy house was a public nuisance under common law because it drew together lewd and debauched persons, thus attempting to disturb the peace and to increase immorality among the people."

The statute in question being highly penal, must be strictly construed, unless we find that the nuisance is carried on, conducted, continued or permitted, or exists, as defined by the act.

Having quite substantially from the testimony of policemen, both in uniform and in plain clothes, we find only that on the night in question, notwithstanding some of the officers had been on the force for many years, notwithstanding that for several weeks a constant and continuous investigation was made as to the character of this house and its inmates, there is no evidence produced to prove there had been anything wrong with these premises at all, except on the night in question.

The defendant, Rosalie Workman, who had occupied these premises with her mother, who had died about a

year prior to the institution of this suit, who had resided in the premises for about 15 or 16 years, in fact, since childhood, who had never been arrested, had never been molested in any manner, shape or form, who had always conducted a boarding and lodging house without question, and only on the night referred to had there ever been the slightest impropriety shown so far as these premises were concerned, or as against the character of the defendant, so that under these circumstances it would not be proper to hold that this was a house of prostitution, where prostitution existed, was conducted, continued or carried on, and thxixpxmmf mf without proof of this character, certainly a determination to that effect would be utterly impossible, and Ĝo hold the premises in question such an immoral house as to cause it to be closed for one year and for an injunction as the act commands would not, in our opinion, be justified.

Determining whether or not the defendants, the owners of the premises in question, should suffer the consequences that flow from the act, we must be absolutely convinced that the house in question was a house of prostitution and that prostitution was carried on, and it bore the reputation of such a house, and whatever doubts there may be must, in our opinion, be given to the owners of the premises.

In this case the only appellants are the owners. The woman, Rosalie Woodman, has not appealed and, there-fore, her case is not before us.

Careful investigation of all the evidence in this record satisfies that the plaintiff has not made its *care* certain, the burden of proof being upon the plaintiff, which it has failed to maintain.

For the reasons assigned, it is ordered, adjudged
and decreed that the judgment of the court a quo be
and the same is hereby annulled, reversed and set aside,
and that there now be judgment in favor of the defend-
ants, Salvadore and Anthony Caraflo, declaring the house
in question not to be a nuisance and that the injunc-
tion, together with the judgment of abatement of the
premises in question, be annulled.

Costs of both courts to be paid by plaintiff and appellee

Judgment reversed. Judgment for defendants.